Keith E. LARSSON, Appellant,

v.

IOWA BOARD OF PAROLE, Appellee.

Gary MUMFORD, Appellant,

v.

IOWA BOARD OF PAROLE, Appellee.

Michael VAN HORN, Appellant,

v.

IOWA BOARD OF PAROLE, Appellee.

Melvin Q. KEY, Appellant,

v.

IOWA BOARD OF PAROLE, Appellee.

No. 89–1457.

Supreme Court of Iowa.

Jan. 23, 1991.

George W. Appleby of Roehrick, Hulting & Moisan, Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., and Thomas D. McGrane, Asst. Atty. Gen., for appellee.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

These are consolidated appeals from prisoners who challenge the revocation of their paroles under Iowa Code chapter 908 (1989). On judicial review of the parole board's action, the district court upheld the constitutionality of chapter 908 against the appellants' claim that the law denies them due process and impermissibly delegates revocation authority to the parole board without providing substantive standards. Finding no constitutional infirmity in the statute, we affirm the district court.

I. *Background.* Appellants Keith E. Larsson, Gary Mumford, Michael Van Horn, and Melvin Q. Key were all prisoners in the Iowa correctional system. Each was released on parole, and each appellant's parole was subsequently revoked after a

hearing held pursuant to Iowa Code chapter 908. Each man appealed his revocation to the Iowa Board of Parole. The appeals urged identical grounds for reversal: (1) that the "one hearing" scheme of Iowa Code chapter 908 violates the minimum due process standards set by the United States Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); and (2) that by failing to include standards for parole revocation in chapter 908, the legislature has impermissibly delegated legislative power to an administrative body.

The parole board denied the appeals and the prisoners sought judicial review in the district court. The district court also found the constitutional challenges groundless. This appeal followed.

■ Our review of appellants' constitutional challenges is guided by familiar principles. A strong presumption of constitutionality cloaks every Iowa statute. *Harden v. State*, 434 N.W.2d 881, 885 (Iowa 1989). Thus, a party who challenges a statute "carries a heavy burden" of rebutting this presumption. *State v. Duncan*, 414 N.W.2d 91, 95 (Iowa 1987). A statute must clearly, palpably, and without doubt infringe upon the constitution before we will declare it unconstitutional. *Saadiq v. State*, 387 N.W.2d 315, 320 (Iowa 1986). With these principles in mind, we consider appellants' arguments in turn.

II. *Due process.* In 1972, the Supreme Court announced the "minimum requirements of due process" applicable to parole revocations. *Morrissey*, 408 U.S. at 488, 92 S.Ct. at 2604, 33 L.Ed.2d at 499. The decision involved two Iowa convicts whose paroles had been revoked without any hearing whatsoever. In examining the due process to which parolees were entitled before their "conditional liberty" was abridged, the court stated that it saw "two important stages in the typical process of parole revocation." *Id.* at 485, 92 S.Ct. at 2602, 33 L.Ed.2d at 496. The first stage involves a reasonably prompt and minimal inquiry ("in the nature of a 'preliminary hearing' ") in which a neutral decision maker determines "whether there is probable cause or reason-

able ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485, 92 S.Ct. at 2602, 33 L.Ed.2d at 497. The second stage is a revocation hearing which "lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488, 92 S.Ct. at 2603, 33 L.Ed.2d at 498. Not wanting to create an inflexible structure in a procedural realm uniquely the responsibility of the State, the Court concluded by laying down the following "minimal requirements of due process":

(a) written notice of the claimed violations of parole;

(b) disclosure to the parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499.

Iowa responded by amending its parole revocation procedure in conformity with *Morrissey*. As originally enacted, chapter 908 provided for an initial appearance before a magistrate followed by a "probable cause hearing" by a "liaison officer." Iowa Code § 908.4 (1979). If the liaison officer found probable cause to proceed, the matter was turned over to the parole board for the dispositional hearing. Iowa Code § 908.7 (1979).

■ A revision of this statutory scheme in 1988 has prompted the present appeal. *See* 1988 Iowa Acts ch. 1091, §§ 6–14 (codified at Iowa Code ch. 908 (1989)). The amended statute retains the requirement

that the parolee be brought promptly before a magistrate for initial appearance, but the statute collapses the other two hearings into one "parole revocation hearing." *See* Iowa Code § 908.4. Appellants argue that this reduction in the number of hearings violates *Morrissey*. The district court found no basis for appellants' contention, and neither do we.

The thrust of appellants' argument is that by eliminating the probable cause hearing before the "liaison officer," the legislature has disregarded *Morrissey*'s two-step regime. To the contrary, we think chapter 908 as amended merely removed a *third* hearing never required or contemplated by *Morrissey*. We reach this conclusion by examining not only chapter 908 but also the related statutes pertaining to initial appearance before the magistrate.

Iowa Code section 908.1 provides two means of starting the process of parole revocation. A parole officer may arrest a parolee based on the officer's determination of probable cause, or the officer may make a complaint before the magistrate and, if it appears from the complaint and any affidavits filed with it that "there is probable cause to believe that such person has violated the parole plan," the magistrate shall issue an arrest warrant. Iowa Code § 908.1. If the arrest is made by the officer without determination of probable cause by a magistrate, then section 908.2 requires that the parolee be brought before a magistrate "without unnecessary delay for an initial appearance." Our rules of criminal procedure provide that at this initial appearance, the magistrate shall

> make an initial, preliminary determination from the complaint, or from an affidavit or affidavits filed with the complaint, oral statement under oath or affirmation from the arresting officer or other person, *whether there is probable cause* to believe that an offense has been committed and that the defendant has committed it.

Iowa R.Crim.P. 2(1) (emphasis added). We think this probable cause determination by a neutral magistrate more than complies with *Morrissey*'s prescribed "minimal in-

quiry ... conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient ... while information is fresh and sources are available." *Morrissey*, 408 U.S. at 485, 92 S.Ct. at 2602, 33 L.Ed.2d at 496.

The other due process protections afforded parolees under chapter 908 likewise meet the "minimum standards" test of *Morrissey*. At the initial appearance, the magistrate must furnish written notice of the claimed violation, advise the parolee concerning the right to appointed counsel, and give notice of the parole revocation hearing and its purpose. Iowa Code § 908.2. At the hearing, the alleged parole violator shall be informed of the evidence against him or her, given the opportunity to be heard, and allowed to present witnesses and cross-examine adverse witnesses. Iowa Code § 908.4.

Appellants doggedly insist that by making these due process protections part of the final revocation hearing, the legislature has done violence to *Morrissey*'s notion of a two-step preliminary/final hearing process. We think the argument completely overlooks the spirit of *Morrissey* and the critical function played by the magistrate in the determination of probable cause. It is true that the magistrate's review is not synonymous with the preliminary hearing afforded criminal defendants under Iowa Rule of Criminal Procedure 2(4)(a) or (b). *Morrissey* makes it plain, however, that hearings provided in the parole revocation context need not meet the standards of a criminal proceeding to meet constitutional muster. *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499. All that is required of the "first hearing" is a determination of probable cause. We are satisfied that Iowa's procedure meets that standard.

Other courts confronting the issue have uniformly held that the dictates of *Morrissey* can be fulfilled in one hearing, rather than two, so long as the matter is heard promptly by an impartial tribunal within a reasonable time after arrest. *See Pierre v. Washington State Bd. of Prison Terms & Paroles*, 699 F.2d 471, 473 (9th Cir.1983); *Triplett v. Deputy Warden, Jackson Pris-*

*on,* 142 Mich.App. 774, 783, 371 N.W.2d 862, 867 (1985); *Hrbek v. Shortridge,* 223 Neb. 785, 787, 394 N.W.2d 285, 287 (1986); *Vrieling v. Oregon State Bd. of Parole,* 21 Or.App. 245, 249, 534 P.2d 516, 518 (1975). Appellants make no attempt to distinguish these cases. Moreover, many courts—including our own—have previously ruled that in the probation revocation context, one hearing instead of two will satisfy the *Morrissey* standard adopted by the Court in *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 662 (1973). *See Patterson v. State,* 294 N.W.2d 683, 684 (Iowa 1980); *Rheuport v. State,* 238 N.W.2d 770, 773–74 (Iowa 1976); *see also Armstrong v. State,* 294 Ala. 100, 312 So.2d 620, 623 (1975); *People v. Coleman,* 13 Cal.3d 867, 894–95, 533 P.2d 1024, 1045–46, 120 Cal.Rptr. 384, 405–06 (1975); *McElroy v. State,* 247 Ga. 355, 358, 276 S.E.2d 38, 40 (1981).

In summary, we conclude that Iowa Code chapter 908 meets the minimum but "flexible" standard contemplated by the Court in *Morrissey.* Given the limited record before us, we have no reason to believe that appellants have not been afforded all the due process to which they are entitled. The district court was correct in so holding.

■ III. *Delegation issue.* Appellants' second argument revolves around the legislature's failure to articulate grounds for parole revocation in Iowa Code section 908.-5. That statute provides, in pertinent part:

> If the parole revocation officer determines that the parole should not be revoked, the parole revocation officer shall issue an order reinstating the parole upon terms and conditions the parole revocation officer shall determine, including the transfer of the parolee to work release if appropriate. If the parole revocation officer determines that the parole should be revoked, the parole revocation officer shall issue an order revoking the parole.

Iowa Code § 908.5. Appellants contend that the legislature is obligated under our state constitution to provide substantive as well as procedural rules to guide the revocation officer's action.

Article III, section 1 of the Iowa Constitution states that "no person charged with the exercise of power properly belonging to one of [the three branches of government] shall exercise any function appertaining to either of the others...." We have interpreted this clause to allow the delegation of certain powers when the purpose of the legislation is adequately stated and reasonably clear guidelines are given for its application. *Goreham v. Des Moines Metro. Area Solid Waste Agency,* 179 N.W.2d 449, 455 (Iowa 1970). In other words, the legislature may authorize executive branch agencies to "fill in the details" to carry out legislative policies. *Elk Run Tel. Co. v. General Tel. Co.,* 160 N.W.2d 311, 316 (Iowa 1968); *Elliot v. Iowa Dep't of Transp.,* 377 N.W.2d 250, 252 (Iowa App. 1985).

As the complexity of our society—and the government's role in it—has increased, the trend has been towards "greater liberality in approving delegations of legislative authority." *Board of Supervisors v. Iowa Dep't of Revenue,* 263 N.W.2d 227, 238 (Iowa 1978). The trend is justified, we have said, because "[t]he intricacies of modern problems the legislature seeks to solve have dictated the use of general rather than detailed standards in enactments aimed at resolving those problems." *John R. Grubb, Inc. v. Iowa Hous. Fin. Auth.,* 255 N.W.2d 89, 99 (Iowa 1977); *see also Polk County v. Iowa State Appeal Bd.,* 330 N.W.2d 267, 273 (Iowa 1983) (noting Iowa among states which have relaxed formerly strict delegation requirements); *Elliot,* 377 N.W.2d at 252–53.

It is against this backdrop that we consider the appellants' argument. Historically, corrections officials have been given broad discretion with respect to the role parole rightly plays in an individual prisoner's constructive reintegration into society. *See generally Morrissey,* 408 U.S. at 478–79, 92 S.Ct. at 2599, 33 L.Ed.2d at 492–93; *Zerbst v. Kidwell,* 304 U.S. 359, 362–63, 58 S.Ct. 872, 873, 82 L.Ed. 1399, 1401 (1938). In upholding a similar statute against constitutional attack, another appellate court

described the breadth of the parole board's discretionary authority this way:

> As part of its power the legislature can grant to the parole board the exclusive power to determine *if* a parole permit shall be revoked and any such revocation by the parole board made within the limits of the legislative authority given to it cannot be attacked.

*State v. Fazzano*, 96 R.I. 472, 478, 194 A.2d 680, 684 (1963).

Section 908.5, standing alone, does not provide guidelines for either the parole revocation officer or the parole board. That is not to say, however, that the agency is without legislative guidance. Iowa Code section 906.5 sets forth the procedural and substantive rules guiding the parole board's decision to grant parole in the first instance.[1] Implicit in the grant of conditional release on parole is the duty resting upon the parolee to abide by those conditions. The "enforcement leverage" given correction officials "derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." *Morrissey*, 408 U.S. at 478–79, 92 S.Ct. at 2599, 33 L.Ed.2d at 493. Thus the conditions leading to revocation inhere in the standards set by the legislature for parole eligibility.

This statutory authority is supported by administrative regulations detailing standard conditions of parole. *See* 205 Iowa Admin.Code 10.4 (1989). A further chapter of the administrative code implements chapter 908 by detailing conduct deemed in violation of standard conditions of parole. *See* 205 Iowa Admin.Code 11.5 (citing, *e.g.*, violation of state and federal laws, assaultive conduct, possession of firearms, and sale or possession of narcotics). The rules also describe at great length the procedural due process to which the alleged parole violator is entitled. *See* 205 Iowa Admin. Code 11.7(1)–(11).

The question is whether this extensive administrative regulation of the parole revocation process has unconstitutionally supplanted the legislature's duty to guide the agency, or is merely a matter of "filling in the details." Given the overarching purpose of parole, the standards articulated in chapter 906, the broad discretion customarily given parole boards in these matters, and the opportunity for appellate review guaranteed by chapter 908, we cannot say beyond a reasonable doubt that the legislature has unconstitutionally delegated its authority in the enactment of chapter 908. The judgment of the district court is affirmed.

AFFIRMED.

---

1. The statute provides:
   [A]t regular intervals ... the board shall interview the person and consider the person's prospects for parole or work release.... [T]he board shall consider all pertinent information regarding the person, including the circumstances of the person's offense, any presentence report which is available, the previous social history and criminal record of the person, the person's conduct, work, and attitude in prison, and the reports of physical and mental examinations that have been made. Iowa Code § 906.5.